UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. |
| | : | |
| | : | VIOLATIONS:  18 U.S.C. § 286, 1341, 2, |
| | : | 981, 28 U.S.C. § 2461 |
| v. | : | (Conspiracy to Defraud the Government |
| | : | With Respect to Claims, Mail Fraud, |
| | : | Causing an Act to Be Done, Forfeiture) |
| ROBERT DELGADO, | : | |
| | : | UNDER SEAL |
| Defendant. | : | |

INFORMATION

The United States Attorney and the United States Department of Justice, Criminal Division, Fraud Section charge that at all times material to this Information:

INTRODUCTION

1.       ROBERT DELGADO ("DELGADO") was the owner and only employee of Global Resources Group ("GRG"), located in Fremont, California.  From in or about July 2000 until April 2001, DELGADO, through GRG, acted as a purported "exporter" in two loan transactions, falsified documents sent to a United States bank and to the Export-Import Bank of the United States ("Ex-Im Bank"), and misappropriated approximately $2.1 million in loan proceeds that were insured by Ex-Im Bank.

2.       Co-Conspirator 1 ("CC-1") was a Philippine national who arranged the fraudulent loan transactions.  CC-1 owned Mindanao Shipbuilding Corporation ("Mindanao Shipbuilding") and Akasya Mindanao ("Akaysa Mindanao"), which were the purported beneficiaries of the loans, assisted DELGADO in executing the fraudulent loan transactions, and received a substantial portion of the misappropriated loan proceeds.

3. First International Bank was a federally insured financial institution based in Hartford, Connecticut and was the lender in the fraudulent loan transactions.

4. The Ex-Im Bank was an independent agency of the executive branch of the United States and located in Washington, D.C. It was also the official export credit agency of the United States. The mission of Ex-Im Bank was to assist in the export of United States goods and services to companies overseas. One of the ways Ex-Im Bank fulfilled this mission was by issuing loan guarantees to United States banks on behalf of creditworthy foreign companies for the purpose of purchasing United States goods. Once Ex-Im Bank issues a loan guarantee, if the foreign borrower defaults on its loan repayments to a United States bank, the Ex-Im Bank pays the amount of the outstanding loan to the United States bank. Before issuing a loan guarantee, Ex-Im Bank required that a United States exporter - the person or entity shipping the United States goods on behalf of the foreign borrower - certify to Ex-Im Bank the type, amount, and value of the United States goods that it would be shipping and that the goods shipped were made in the United States. Relying on information provided by DELGADO and others, Ex-Im Bank provided First International Bank with loan guarantees, promising that the Ex-Im Bank would reimburse First International Bank for any losses it incurred in the fraudulent Mindanao Shipbuilding and Akasya Mindanao loan transactions.

## Count One
**(Conspiracy to Defraud the Government With Respect to Claims)**

<u>THE CONSPIRACY</u>

5. Paragraphs 1 through 4 of this Information are realleged and incorporated by reference as if set out in full.

6. From in or about July 2000 until in or about April 2001, in the District of

Columbia and elsewhere, DELGADO, CC-1, and others did unlawfully and knowingly agree, combine and conspire together and with each other to defraud an agency of the United States by obtaining and aiding to obtain the payment and allowance of a false, fictitious and fraudulent claim, that is: to agree, combine and conspire together and with each other to defraud the Ex-Im Bank, an agency of the United States, by obtaining and aiding to obtain the payment and allowance of a false, fictitious and fraudulent claim.

### A Goal of the Conspiracy

7. A goal of the conspiracy was for the co-conspirators, including DELGADO, to unlawfully enrich themselves by submitting false and fraudulent information to First International Bank and Ex-Im Bank to obtain and misappropriate the loan proceeds.

### Manner and Means of the Conspiracy

8. To achieve the goal of the conspiracy, DELGADO and CC-1 used the following manners and means, among others:

    A. DELGADO and his co-conspirators prepared false documents indicating that United States goods would be purchased and shipped to the Philippines and then submitted those documents to Ex-Im Bank, through First International Bank.

    B. DELGADO and his co-conspirators received money from the bank loans and distributed that money amongst themselves for their own personal benefit and use.

Overt Acts

9. Within the District of Columbia and elsewhere, in furtherance of the above described conspiracy and in order to carry out the objects thereof, DELGADO, CC-1, and others known and unknown, committed the following overt acts, among others:

    A. In or about July 2000, DELGADO met with CC-1 and agreed to act as "exporter" in two loan transactions: one between First International Bank and Mindanao Shipbuilding and one between First International Bank and Akasya Mindanao; both Mindanao Shipbuilding and Akaysa Mindanao were companies owned by CC-1. CC-1 agreed to pay DELGADO a fee of 3% of the purported goods to be shipped.

    B. On or about March 24, 2001, DELGADO prepared false Commercial Invoices listing more than $2.5 million worth of United States goods that he had purportedly purchased on behalf of Mindanao Shipbuilding and Akaysa Mindanao.

    C. On or about March 27, 2001, DELGADO prepared false Ex-Im Bank Supplier's Certificates certifying that DELGADO had purchased and shipped more than $2.5 million worth of United States goods to Mindanao Shipbuilding and Akaysa Mindanao and that the entire amount of inventory was purchased from United States companies.

    D. On or about March 27, 2001, DELGADO sent to Ex-Im Bank, through First International Bank, the Commercial Invoices and Supplier's Certificates that he prepared, as proof that he had purchased and shipped more than $2.5 million worth of United States goods.

    E. From on or about March 29, 2001 until April 5, 2001, after receiving $2,136,900 in Mindanao Shipbuilding and Akaysa Mindanao loan proceeds from First

International Bank, DELGADO transferred approximately $100,000 of the proceeds to himself and approximately $1.8 million to bank accounts owned or controlled by CC-1.

**(Conspiracy to Defraud the Government with Respect to Claims, in violation of Title 18, United States Code, Section 286)**

## Count Two
### (Mail Fraud)

10.     Paragraphs 1 through 4 and 9 of this Information are realleged and incorporated by reference as if set out in full.

11.     From in or about July 2000 until April 2001, in the District of Columbia and elsewhere, DELGADO, along with others known and unknown, did knowingly devise and intend to devise a scheme and artifice to defraud the Ex-Im Bank and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme used the United States mail.

12.     On or about March 27, 2001, DELGADO, along with others known and unknown, for the purpose of executing the scheme and artifice to defraud, did knowingly cause to be delivered through a commercial interstate carrier an Ex-Im Bank Supplier's Certificate to First International Bank, knowing that it would be forwarded to the Ex-Im Bank.

**(Mail Fraud, Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1341 and 2)**

### FORFEITURE

13.     As a result of the mail fraud offense alleged in Count Two of the Information, which is realleged and incorporated by reference for the purpose of alleging forfeitures to the United States of America pursuant to Title 18, United States Code, Section 981, and Title 28,

United States Code, Section 2461(c), defendant DELGADO shall, upon conviction of such offense alleged in the Information, forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds traceable to the mail fraud offense, wherever located, and in whatever name held, including, but not limited to a sum of money equal to the amount of proceeds obtained as a result of the mail fraud in violation of Title 18, United States Code, Section 1341.  By virtue of the offense charged in Count Two of the Information, any and all interest that the defendant has in the property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981, in conjunction with Title 28, United States Code, Section 2461(c).

    14.    In the event that any property described above as being subject to forfeiture, as a result of any act or omission by the defendant:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to or deposited with a third person;

   (c) has been placed beyond the jurisdiction of the Court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of DELGADO up to the value of the above described property in paragraph 17(a)-(e).

**(Forfeiture, Title 18, United States Code, Section 981, Title 28, United States Code, Section 2461)**

                JEFFREY A. TAYLOR
                United States Attorney
                In and For the District of Columbia

By: _____
      MICHAEL K. ATKINSON
      D.C. Bar # 430517
      Assistant United States Attorney
      Fraud and Public Corruption Section
      555 4th Street, N.W.
      Washington, D.C. 20530
      (202) 616-3702

      STEVEN A. TYRRELL
      Acting Chief, Fraud Section
      Criminal Division
      United States Department of Justice

By: _____
      HANK BOND WALTHER
      D.C. Bar # 477218
      Trial Attorney
      Fraud Section, Criminal Division
      United States Department of Justice
      1400 New York Avenue, NW
      Washington, D.C. 20005
      (202) 257-6176

Date:   October 17, 2006